## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103,

                Plaintiff,

         v.

MICHAEL V. CHHABRA
215 SW 6th Place
Pompano Beach, FL 33060,

VINEET K. CHHABRA
225 SW 6th Court
Pompano Beach, FL 33060,

TORT FUND LLC
545 Metro Place S, Suite 100
Dublin, OH 43017-5353,

TORT FUND SPV1, LLC
545 Metro Place S, Suite 100
Dublin, OH 43017-5353, and

TORT FUND SPV2, LLC
80 M Street SE, Suite 100
Washington, DC  20003-3550

               Defendants.

**COMPLAINT**

Civil Action No. 1:24-cv-2561

**JURY TRIAL DEMANDED**

Plaintiff Securities and Exchange Commission (the "Commission") alleges as follows against Defendants Michael V. Chhabra ("Michael Chhabra"), Vineet K. Chhabra, aka Vincent K. Chhabra ("Vineet Chhabra"), Tort Fund LLC, Tort Fund SPV1, LLC ("Tort Fund SPV1") and Tort Fund SPV2, LLC ("Tort Fund SPV2"):

## SUMMARY

1.        Beginning in April 2019 and continuing through at least September 2020, Michael Chhabra and his father, Vineet Chhabra (collectively, "the Chhabras"), engaged in a fraudulent scheme to misappropriate money from investors by lying to them about an investment opportunity they were offering involving litigation financing.  The Chhabras promised returns and interest or profits from lending money to law firms to finance mass tort litigation on behalf of victims of allegedly defective medical devices and harmful consumer products.  The Chhabras ultimately induced three investors to purchase $125,000 in securities through entities they controlled:  Tort Fund LLC and its "specialty purpose vehicles" -- Tort Fund SPV1 and Tort Fund SPV2 (collectively, "the Tort Fund Entities").

2.        The Chhabras, through the Tort Fund Entities, falsely claimed that Tort Fund LLC was actively partnering with law firms and that it "provides litigation financing for mature mass tort cases."  Unbeknownst to the investors, neither the Chhabras nor the Tort Fund Entities ever provided litigation financing for mass tort cases, and there were no agreements with law firms to do so.

3.        Defendants also misled investors about the safety and security of the investments by claiming, among other things, that the investments were collateralized and UCC1-secured when they were not.

4.        Instead of using investor funds to finance mass tort litigation as promised, the Chhabras misappropriated the money they raised through the Tort Fund Entities for their personal use, such as to pay off debts from the Chhabras' prior business ventures, and for food, travel and entertainment expenses, and otherwise used the remaining funds to perpetuate their unlawful scheme, including to solicit additional investors.

5.      Knowing they had not loaned any of the funds to law firms to fund litigation as represented to investors, the Chhabras repeatedly provided investors with false information that the Tort Fund Entities were currently providing funding to law firms and about the safety of and return on their investments, while continuing to solicit these investors to make additional investments with the Tort Fund Entities.

6.      By engaging in the conduct described herein, Defendants violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7.      The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d)], to enjoin such acts, transactions, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil penalties, officer and director bars and such other and further relief as the Court may deem just and appropriate.

8.      This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa].

9.      Venue in this District is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Much of the alleged unlawful conduct occurred in this District.  Tort Fund SPV2 is a District of Columbia limited liability company.  During most of the relevant time period, Michael Chhabra resided in this

District while engaging in the offering fraud alleged, and certain transactions, acts and business of the Tort Fund Entities that constitute the alleged violations occurred in this District.

10.     In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in, or instrumentalities of, interstate commerce, or the mails, or the facilities of a national securities exchange, including by providing false statements to would-be investors via email.

## DEFENDANTS

11.     **Michael Chhabra**, age 29, currently resides in Pompano Beach, Florida, but for much of the conduct alleged herein, resided in the District of Columbia.  He founded Tort Fund LLC, and at all relevant times acted as its Chief Executive Officer and Manager.  In addition, at all relevant times, he acted as a Manager for Tort Fund SPV1 and Tort Fund SPV2.  Michael Chhabra also had an ownership interest in Law Firm A, a law firm that Tort Fund LLC claimed to be providing funds to for the purpose of financing mass tort litigation.

12.     **Vineet Chhabra**, age 53, resides in Pompano Beach, Florida.  At all relevant times, he served as the Marketing Consultant for Tort Fund LLC and the Investor Relations Coordinator for Tort Fund SPV1 and Tort Fund SPV2.  Vineet Chhabra is the father of Michael Chhabra.

13.     **Tort Fund LLC** is an Ohio limited liability company originally formed on or about April 22, 2019, with a principal place of business in Dublin, Ohio.  At all relevant times, Michael Chhabra acted as the Manager and Registered Agent for Tort Fund LLC.  In or about June of 2019, Tort Fund LLC relocated its principal place of business to the District of Columbia

4

and subsequently to Pompano Beach, Florida, where Michael Chhabra now resides.  At all relevant times, Tort Fund LLC has been controlled by Michael Chhabra and Vineet Chhabra.

14.     **Tort Fund SPV1** is an Ohio limited liability company originally formed on or about April 22, 2019, with a principal place of business in Dublin, Ohio.  At all relevant times, Tort Fund LLC was the Manager of Tort Fund SPV1, and Michael Chhabra, as the Manager of Tort Fund LLC, acted as the Manager and Registered Agent for Tort Fund SPV1.  In or about June of 2019, Tort Fund SPV1 relocated its principal place of business to the District of Columbia and subsequently to Pompano Beach, Florida, where Michael Chhabra now resides.

15.     **Tort Fund SPV2** is a District of Columbia limited liability company originally formed on or about September 30, 2019, with its principal place of business in the District of Columbia and subsequently was operated from Michael Chhabra's home in Pompano Beach, Florida.  At all relevant times, Tort Fund LLC was the Manager of Tort Fund SPV2, and Michael Chhabra, as the Manager of Tort Fund LLC, acted as the Manager for Tort Fund SPV2.  Tort Fund SPV2 failed to file its Biennial Report and has been inactive since 2020.

## FACTUAL ALLEGATIONS

16.     From at least June 2019 through November 2019, the Chhabras and the Tort Fund Entities made fraudulent representations in an attempt to attract investors -- ultimately inducing at least three investors from across the country to purchase a total of $125,000 in securities.  As detailed below, Defendants made numerous material misstatements in the Tort Fund Entities' offering documents and in other written and verbal communications claiming that the investors' money would be used to provide litigation financing to law firms handling mass tort litigation when it was not.

17.     Rather than using the funds for litigation financing as represented, the Chhabras instead misappropriated the monies for the benefit of themselves and their family and to perpetuate and attempt to expand their fraudulent scheme carried out through the Tort Fund Entities.

18.     As alleged in more detail below, Defendants made material misrepresentations about (i) the past and current business operations of Tort Fund LLC; (ii) the safety and security of the investments in the Tort Fund Entities; and (iii) the use of investor funds.

I.     **THE CHHABRAS USE THE TORT FUND ENTITIES TO RAISE FUNDS**

19.     In April 2019, the Chhabras formed Tort Fund LLC purportedly to engage in the business of litigation financing -- lending money to law firms actively litigating lawsuits involving mass tort claims against well-known manufacturers of household products and specific medical devices.  Michael Chhabra was the Manager and Registered Agent of Tort Fund LLC, and he opened a bank account on behalf of Tort Fund LLC in April 2019.

20.     In furtherance of their fraudulent scheme, the Chhabras utilized what they characterized as "specialty" purpose vehicles to raise funds for Tort Fund LLC -- Tort Fund SPV1 and Tort Fund SPV2.

21.     Simultaneously with forming Tort Fund LLC, the Chhabras formed Tort Fund SPV1 as the initial specialty purpose vehicle.  Tort Fund SPV1 was wholly owned by Tort Fund LLC.  Michael Chhabra opened a separate bank account on behalf of Tort Fund SPV1.

22.     The offering documents for Tort Fund SPV1, which included a one-page summary of Tort Fund SPV1, a Tort Fund LLC "Executive Summary" that referenced Tort Fund SPV1, and a "Unit Purchase Agreement" with an "Operating Agreement" attached thereto, were

jointly drafted by Michael Chhabra and Vineet Chhabra before they caused them to be distributed to prospective investors.

23.     The one-page summary for Tort Fund SPV1 stated that the "Revenue Model" was to pool investor capital and lend money to partner law firms to fund mass tort cases "via fixed-rate, high-interest debt instruments." Tort Fund SPV1 would then be repaid principal plus accrued interest from legal fees the law firms realized once the mass tort cases were resolved, which then would be distributed to the Tort Fund SPV1 investors.

24.     The Tort Fund SPV1 Unit Purchase Agreement stated that it was a "sale and purchase of securities" and included a list of "Investment Considerations and Risk Factors" that repeatedly referred to the Unit Purchase Agreement as an investment and stated that it was speculative. The Tort Fund SPV1 offering documents also referred to the Unit Purchase Agreement as an "investment."

25.     In the offering documents, Tort Fund LLC, Tort Fund SPV1 and the Chhabras told prospective investors that investor funds would be used to make fixed-rate, high interest loans to law firms handling mass tort cases, which purportedly would generate sufficient profits to make profit distributions to investors. The offering documents also stated that Tort Fund LLC utilized strict underwriting standards for the law firm loans to "ensure payback of principal and interest to investors." The offering documents also provided that investors in Tort Fund SPV1 would receive a pro rata distribution of the net profits Tort Fund SPV1 received from Tort Fund LLC's and Tort Fund SPV1's litigation financing business.

26.     Even though Tort Fund SPV1 was not fully subscribed, the Chhabras formed Tort Fund SPV2 in September 2019 to raise up to an additional $20 million for Tort Fund LLC's purported litigation financing business through promissory notes. Unlike Tort Fund SPV1,

however, the Chhabras did not open a bank account for Tort Fund SPV2.  Instead, investments in Tort Fund SPV2 were sent to the bank account for Tort Fund LLC.

27.     The Chhabras solicited investors to purchase Tort Fund SPV2 securities using a set of written offering documents that they authored together, as they had done for Tort Fund SPV1.  The Tort Fund SPV2 offering documents included a one-page summary of Tort Fund SPV2, a separate Tort Fund LLC "Executive Summary" that referenced Tort Fund SPV2, a "Note Purchase Agreement," and a "Loan Agreement and Promissory Note."  The terms of the Loan Agreement and Promissory Note stated that the lender would make a single balloon payment of the principal to the borrower plus an amount equal to 60% of the principal 48 months from the date of the investment.

28.     The offering documents for Tort Fund SPV2 stated that investor funds would be used to make fixed-rate, high interest loans to law firms handling mass tort cases, which purportedly would generate sufficient profits to repay the investor's principal investment plus interest.

29.     The header of the Tort Fund SPV2 Loan Agreement and Promissory Note clearly stated that it represented securities and included a list of "Investment Considerations and Risk Factors" that stated the investment was speculative.  The Tort Fund SPV2 offering documents also repeatedly referred to the Loan Agreement and Promissory Note as an "investment."

30.     While the investments in Tort Fund SPV1 and Tort Fund SPV2 were structured differently, the stated purpose of both investments was the same -- to pool investor capital and lend it to "partner" law firms handling mass tort cases through a fixed-rate, high-interest debt instrument.

31.    In the Executive Summaries that were part of the Tort Fund Entities offering documents, the Chhabras touted the investments as a lucrative social impact investing opportunity that would benefit the victims of allegedly defective medical devices and harmful consumer products.  The Executive Summaries further purported to offer "collateralized, UCC1-secured investments to investors via specialty purpose vehicles."

32.    The Tort Fund SPV1 and Tort Fund SPV2 offering documents also stated that law firms handling mass tort cases "earn substantial legal fees, typically 33% of the amount awarded, which often relates to tens if not hundreds of thousands of dollars per case."

33.    The offering documents promised that those fees would be used to repay Tort Fund LLC's loans to the law firms and that Tort Fund LLC would use the proceeds to make profit distributions to the Tort Fund SPV1 investors and to repay the Tort Fund SPV2 investors' principal investments plus interest.

34.    At the time the Chhabras formed Tort Fund LLC, the Chhabras had no prior experience in operating a litigation financing business or providing litigation financing to law firms.

35.    The Executive Summaries that the Chhabras distributed to Tort Fund SPV1 and Tort Fund SPV2 investors falsely stated that Tort Fund LLC had entered into an agreement with Law Firm A to exclusively fund its case docket to replicate the success previously achieved in mass tort cases against well-known manufacturers of household products and specific medical devices.  The Executive Summaries further stated that Tort Fund LLC was working with not just Law Firm A, but with a network of "partner" law firms.  These claims were not true.

36.    In reality, there was never any agreement with Law Firm A or with any law firm that was litigating tort cases.  Law Firm A did not litigate mass tort cases or have any need for

litigation funding.  At no time did Tort Fund LLC work with a network of law firms to provide litigation funding.  Rather, Tort Fund LLC never provided litigation funding to any law firms litigating mass tort cases.

37.     The Chhabras marketed the Tort Fund SPV1 and Tort Fund SPV2 securities directly and indirectly through Tort Fund LLC employees and independent contractors, Facebook ads, Tort Fund LLC's website, and telephone and email solicitations with prospective investors.

38.     The Chhabras had control over and jointly drafted the content available on the Tort Fund website and the investor portal.

39.     Vineet Chhabra and Michael Chhabra both had email addresses with the Tort Fund Entities, which they used to communicate with prospective and actual investors.

40.     From at least June 2019 through August 2021, Michael Chhabra emailed directly and indirectly with prospective and actual investors to, among other things, explain how to access the investor portal, send offering documents for the Tort Fund Entities, and provide updates on the status of the investments.

41.     From at least June 2019 through October 2020, Vineet Chhabra also emailed directly and indirectly with prospective and actual investors to, among other things, provide updates on the purported status of the investments.

**A.     The Chhabras and Tort Fund LLC Sell One Investment in Tort Fund SPV1**

42.     In the summer of 2019, Tort Fund LLC, Tort Fund SPV1 and the Chhabras solicited investors for Tort Fund SPV1.  At the outset of the scheme, the Chhabras utilized individuals from Company A to find potential investors for Tort Fund LLC and Tort Fund SPV1.

43.     In or about June 2019, an individual from Company A, acting on behalf of Tort Fund LLC, reached out to Investor 1, who resided in Colorado, to discuss the potential investment opportunity in Tort Fund SPV1.

44.     On June 11, 2019, Michael Chhabra emailed Investor 1 to explain how to access the investor portal to access documents relating to the Tort Fund SPV1 investment opportunity. The investor portal contained the offering documents for Tort Fund SPV1.

45.     On July 15, 2019, Michael Chhabra emailed Investor 1 the Unit Purchase Agreement for Tort Fund SPV1 and separately emailed Investor 1 instructions to make payment for an investment in Tort Fund SPV1.

46.     That same day, Investor 1 executed the Unit Purchase Agreement for Tort Fund SPV1 and, in accordance with the instructions Michael Chhabra provided, mailed a $50,000 check payable to Tort Fund SPV1 to its address in Dublin, Ohio.

47.     Investor 1's $50,000 check was deposited in the bank account for Tort Fund SPV1 with a transaction date posting of July 17, 2019.

48.     In exchange for his funds, Investor 1 then received a fully executed Unit Purchase Agreement for 200,000 Common Units of Tort Fund SPV1, which was signed by Michael Chhabra on behalf of Tort Fund SPV1.  As a result, the Chhabras, Tort Fund LLC and Tort Fund SPV1 sold $50,000 in securities to Investor 1.

**B.      The Chhabras and Tort Fund LLC Sell Two Investments in Tort Fund SPV2**

49.     In the fall of 2019, Tort Fund LLC, Tort Fund SPV2 and the Chhabras solicited investors for Tort Fund SPV2 through Facebook advertisements and Employee 1 and Employee 2, who were hired by Tort Fund LLC for the purpose of finding investors.

1.  **Investor 2 Makes a $50,000 Investment in Tort Fund SPV2**

50.     In or about August or September 2019, Investor 2, who resided in New York at the time, saw one of Tort Fund LLC's advertisements on Facebook for an investment opportunity in Tort Fund LLC and sent an inquiry for additional information.

51.     On September 16, 2019, Investor 2 received a call from Employee 1, who was hired by Michael Chhabra.  Employee 1 provided Investor 2 with additional information on the investment.  Following the call, Tort Fund LLC emailed Investor 2 the one-page summary for Tort Fund SPV2 and invited him to visit the Tort Fund website for the latest information on verdicts from mass tort cases.  The Chhabras were blind copied on the email to Investor 2.

52.     On September 24, 2019, Employee 1 spoke with Investor 2 on the telephone and followed up with an email to Investor 2 attaching "the legal documents and disclosures for the Tort Fund SPV-2 15% debt offering."

53.     In subsequent email communications on September 24, 2019, Employee 1 forwarded questions from Investor 2 to Michael Chhabra, who drafted responses to send back to Investor 2.   In those responses, Michael Chhabra stated: "we currently have significant demand at the 30% level and only project that we would lend above that rate, not below."  This statement was false, as the Tort Fund Entities had not lent one dollar to a law firm to finance mass tort litigation and had not entered into any agreements with any law firm to do so.

54.     Michael Chhabra also stated that the Tort Fund Entities took steps to mitigate potential risk, including "(1) collateralizing every loan we make by placing a UCC-1 lien directly on the filed cases, (2) ensuring that borrower law firms have a docket of cases where legal fees are projected to be at least 5 times greater than the amount we lend to them …, (3) ensuring that our partner law firm [Law Firm A] is named on every client retainer agreement as oversight

counsel…, and (4) ensuring that funds are properly distributed among different litigations …." None of this was true.

55.     On September 24, 2019, Employee 1 then sent the response that Michael Chhabra drafted to Investor 2 and attached the Tort Fund SPV2 one-page summary, a Tort Fund LLC Executive Summary, the Note Purchase Agreement and the wire instructions for payment.

56.     On October 4, 2019, Employee 1 emailed Investor 2 the Note Purchase Agreement, with the Loan Agreement and Promissory Note, to make an investment in Tort Fund SPV2.  The email was drafted by Michael Chhabra.

57.     On October 8, 2019, Investor 2 made a $50,000 investment in Tort Fund SPV2 by wiring the funds directly to the account for Tort Fund LLC in Ohio.

**2.   Investor 3 Makes a $25,000 Investment in Tort Fund SPV2**

58.     In or about September 2019, Employee 2, an individual hired by Michael Chhabra to work for Tort Fund LLC, approached Investor 3, who resided in California and was an acquaintance of Employee 2, about investing in Tort Fund SPV2.

59.     On September 20, 2019, at the request of Employee 2, Employee 1 emailed Investor 3 an Executive Summary that referenced Tort Fund SPV2 and requested a phone call to discuss further.

60.     Later that day, Employee 1 spoke with Investor 3 on the phone and then followed up with another email attaching the Tort Fund SPV2 one-page summary.

61.     On September 27, 2019, Employee 2 emailed Investor 3 the Tort Fund SPV2 Note Purchase Agreement, which included the Loan Agreement and Promissory Note, as well as the wire payment instructions.  Both Michael Chhabra and Vineet Chhabra were blind copied on the email.

62.     On or about October 21, 2019, Investor 3 executed the Note Purchase Agreement and the Loan Agreement and Promissory Note for his investment in Tort Fund SPV2.

63.     On or about November 6, 2019, $25,000 was wired from an IRA account for the benefit of Investor 3 to the account for Tort Fund LLC for Investor 3's investment in Tort Fund SPV2.

64.     The securities that Tort Fund LLC, Tort Fund SPV2 and the Chhabras sold to Investors 2 and 3 took the form of a Loan Agreement and Promissory Note, in which Tort Fund LLC, Tort Fund SPV2 and the Chhabras promised investors that they would receive a balloon payment of 60% accrued interest on the principal amount of their investment as well as the return of their principal within 48 months.

65.     Investors 2 and 3 each received a Loan Agreement and Promissory Note signed by Michael Chhabra on behalf of Tort Fund SPV2.

66.     The Chhabras, Tort Fund LLC and Tort Fund SPV2 sold $75,000 in securities to Investors 2 and 3.

## II.     DEFENDANTS MAKE MATERIAL MISREPRESENTATIONS TO INVESTORS IN THE TORT FUND ENTITIES

67.     The Chhabras knowingly misled prospective investors by promising that their investments would be used by Tort Fund SPV1 and Tort Fund SPV2 for the purpose of making loans to law firms handling mass tort litigation on behalf of victims of defective medical devices or harmful consumer products.

68.     The Chhabras misled investors into believing that they already were funding mass tort cases and actively engaging in litigation financing. In reality, at no time did the Chhabras provide any law firm with litigation financing relating to mass tort claims or any other cases and had no viable plans or agreements to do so.

69.    Yet, the offering documents falsely stated that Tort Fund LLC "provides litigation financing for mature mass tort cases with established liability and a precedent for settlement." These written offering documents for the Tort Fund Entities were distributed via email from the Chhabras or individuals working on behalf of the Tort Fund Entities to engage prospective investors to induce them to invest in the Tort Fund Entities.

70.    In the written offering documents for Tort Fund SPV1 and Tort Fund SPV2, the Chhabras also falsely stated that Tort Fund LLC "works with a network of partner law firms," that its "network of attorneys are committed to ensuring that plaintiffs get the best possible deal from the justice system" and that Tort Fund LLC "pools investor capital and lends to its partner law firms."

71.    Further, Defendants falsely claimed in the Tort Fund SPV1 and Tort Fund SPV2 written offering documents that Tort Fund LLC "has entered into an agreement with" Law Firm A "to exclusively fund its case dockets" and that Tort Fund LLC has financed "the acquisition of mass tort cases" against well-known manufacturers of specific medical devices and consumer household products.

72.    Defendants also falsely claimed on Tort Fund LLC's website that the "Current Tort Fund Investment Portfolio" included cases involving specific manufacturers of medical devices and consumer products and that "Tort Fund is Currently Funding" cases involving the identified manufacturers, medical devices and consumer products.

73.    In or about July 2019, Tort Fund LLC, Tort Fund SPV1, Michael Chhabra and Vineet Chhabra made material misrepresentations to Investor 1 in emails and phone calls to induce him to invest in Tort Fund LLC and Tort Fund SPV1 relating to the companies' operations, the safety and security of the investments and how the investor funds would be used.

74.     In or about August through November 2019, Tort Fund LLC, Tort Fund SPV2,
Michael Chhabra and Vineet Chhabra, directly and indirectly, made material misrepresentations
to Investors 2 and 3 in emails and phone calls, including through communications drafted by
Michael Chhabra, to induce them to invest in Tort Fund LLC and Tort Fund SPV2, relating to
the companies' past and current operations, the safety and security of the investments and how
the investor funds would be used.

75.     For instance, on November 6, 2019, Investor 2 began asking whether he could
have his $50,000 investment in Tort Fund SPV2 returned.  In response, on November 7, 2019, in
an email drafted by Michael Chhabra, Employee 1 advised that the money was "promptly lent to
borrower law firms" and could not be returned.  Employee 1 further advised Investor 2 that it had
"already earned you just shy of $600 to date!"  In response, Investor 2 agreed to allow the
investment to continue.

76.     These representations were false because the Tort Fund Entities had not invested
in any cases involving the identified manufacturers or the specified medical devices or consumer
products.  Further, the Chhabras did not loan Investor 2's money to law firms, but rather used it
to pay for their personal expenses, among other things, as discussed below.

77.     Contrary to these representations, the Tort Fund Entities also did not have a
"network of partner law firms" or a "network of attorneys" to fund any litigation.  The Tort Fund
Entities never had any agreements with law firms to lend money to finance mass tort litigation
and did not finance the acquisition of tort cases involving the identified manufacturers or the
specified medical devices and consumer household products.

78.     Defendants also falsely claimed that investments in Tort Fund SPV1 and Tort Fund SPV2 were "collateralized, UCC1-secured investments" and that the investments were "low-risk."

79.     In reality, the Tort Fund SPV1 and Tort Fund SPV2 investments were not collateralized or UCC1-secured investments and not guaranteed in any way.  Because Defendants did not lend any money to any law firms or obtain the promised high-interest debt instruments, there was no collateral for the Tort Fund SPV1 and Tort Fund SPV2 investments, and no UCC1s were filed.

80.     The Chhabras knew that Tort Fund LLC had made no loans to any law firms handling mass tort litigation so there was no fixed-rate high interest debt instrument to use as collateral to secure the Tort Fund SPV1 and Tort Fund SPV2 investments.

81.     In addition, Defendants perpetuated their fraudulent scheme by knowingly sending misleading spreadsheets and email updates to the investors in Tort Fund SPV1 and Tort Fund SPV2 from July 2019 through at least August 2021, which purported to identify the amounts of interest earned on their investments and falsely promised investors that they would not lose their principal.  In reality, the Chhabras knew there was never any litigation financing provided to law firms that could have generated profits to pay interest to investors.

82.     Defendants also solicited Tort Fund SPV1 and Tort Fund SPV2 investors in emails and phone calls to make additional investments and to refer friends, family members or others claiming falsely that Tort Fund LLC planned to close out the Tort Fund SPV2 investment on December 20, 2019, as well as an additional special purpose vehicle, Tort Fund SPV3.

83.     For example, on December 2, 2019, Michael Chhabra emailed Investor 2 and Investor 3 that the "[Tort Fund] SPVs we manage have continued to deploy capital on an

immediate basis as investors place capital," that "funds are currently being deployed" in litigation against specific manufacturers of specific medical devices and consumer products and that Tort Fund LLC's business "continues to grow and perform within our expected range of results." None of this was true.

84.     Michael Chhabra made these misrepresentations in an attempt to further induce Investor 2 and Investor 3 to invest additional funds with Defendants. Contrary to the false representations, there was no additional money raised for Tort Fund SPV2 beyond what Investor 2 and Investor 3 had provided, and the Chhabras never closed out Tort Fund SPV2 on December 20, 2019. Further, upon information and belief, the Chhabras never took action to form "Tort Fund SPV3" despite the representations that it would provide another investment opportunity to engage in litigation funding.

85.     And on January 14, 2020, Employee 1 emailed Investor 2 a spreadsheet purporting to show Investor 2's account balance with interest accrued on his $50,000 investment in the amount of $965.75.

86.     On April 16, 2020, Michael Chhabra emailed Investor 1 with an update on his investment, which was drafted by Vineet Chhabra. In the email, the Chhabras claimed that they were in the process of finalizing a $50-100 million investment in "Tort Fund" by a New York investment firm. This investment never materialized.

87.     On June 8, 2020, Michael Chhabra emailed Investor 2 that Investor 2's investment had accrued interest in the amount of $4,993.13.

88.     On October 20, 2020, Vineet Chhabra emailed Investor 2 that Employee 1 was no longer with Tort Fund LLC and that Investor 2's "$50,000 investment has accrued $7,726.03 in interest, for a total of $57,726.00." Investor 2 then asked to redeem his investment, to which

Vineet Chhabra replied that Investor 2 would need to wait until October 9, 2023, when his investment would mature.

89.     On August 20, 2021, Vineet Chhabra emailed Investor 1 "you will not lose your investment," as he had been telling Investor 1 for several months.

90.     In stark contrast to these false representations, the Tort Fund Entities did not make any loans to law firms handling mass tort litigation, did not deploy any funds for litigation financing and no interest accrued on any of the investments.  Instead, the Chhabras misappropriated the investor funds for their own personal expenses and to perpetuate their fraudulent scheme as discussed in more detail below.

**III.     THE CHHABRAS MISUSE INVESTOR FUNDS**

91.     Contrary to what investors were told in writing and orally, the Chhabras used investor funds to (i) pay unrelated business expenses from the Chhabras' prior business ventures, (ii) fund the Chhabras' personal expenses, and (iii) perpetuate the fraud.  The personal expenses included, among other things, rent on the Chhabras' homes; legal fees for litigation against Michael Chhabra and some of his family members relating to a company in bankruptcy proceedings for which Michael Chhabra served as the Chief Operating Officer; expenses to clean up Michael Chhabra's online reputation; payment for debts the Chhabras owed from prior unrelated business ventures; household, travel and entertainment expenses for their families; and frequent purchases at restaurants, grocery, convenience and retail stores.

92.     For example, on July 17, 2019, the $50,000 in funds from Investor 1 were deposited in the Tort Fund SPV1 bank account, which had a balance of $10.00 at the time of the deposit.  The next day Michael Chhabra transferred $20,000 to Company A to pay debts owed by the Chhabras from a prior business relationship with Company A.  Also on July 18, 2019,

Michael Chhabra transferred $25,000 from the Tort Fund SPV 1 account to a bank account for Law Firm A. Michael Chhabra previously opened the Law Firm A bank account and he had signature authority over that account. Michael Chhabra then transferred money from the Law Firm A bank account to his personal bank account, and to bank accounts for companies that were owned and controlled by Vineet Chhabra. In addition, Michael Chhabra wrote checks, transferred funds and made debit card purchases for various other expenditures unrelated to the business of Tort Fund LLC or Tort Fund SPV1, including for food, entertainment and the Chhabras' prior business ventures, as well as to perpetuate the fraudulent scheme, including for office space and to solicit additional investors.

93.    Similarly, on October 8, 2019, the same day that Investor 2 wired $50,000 to the bank account for Tort Fund LLC, Michael Chhabra transferred $30,000 from the Tort Fund LLC account, which was overdrawn at the time, to the bank account for Law Firm A, over which Michael Chhabra had control. Michael Chhabra then transferred $5,000 from the Law Firm A account to his personal bank account. Michael Chhabra also transferred $12,000 from the Law Firm A bank account to the companies owned or controlled by Vineet Chhabra. The remaining amounts from Investor 2's funds were used to pay the Chhabras' personal expenses and for expenses to perpetuate the fraud as discussed herein.

94.    In total, the Chhabras transferred over $80,000 of the investor funds to their own accounts and to fund activities to benefit themselves and other family members.

95.    The Chhabras spent the remainder of the money raised from investors -- over $40,000 – to perpetuate the fraud, including to compensate individuals for soliciting investors and providing office space for that purpose.

96.     None of the $125,000 Defendants raised from investors was used to provide litigation financing to law firms that were handling tort litigation.

97.     The Chhabras did not have any agreement with Law Firm A or any other law firm to fund litigation.

98.     The Chhabras and the Tort Fund Entities did not disclose to investors that they planned to, or did in fact, use investor money for the Chhabras' personal benefit or that investor money would be used to try to find additional investors for the Tort Fund Entities.

IV.     **TORT FUND LLC GOES DARK AND THE CHHABRAS IGNORE INVESTORS**

99.     As communication from Defendants became less frequent, eventually some of the investors questioned the status of their investments and the viability of the business of Tort Fund LLC.

100.     Upon information and belief, the last communication between Vineet Chhabra and Investor 1 was August 20, 2021, in which Vineet Chhabra assured Investor 1 that he would not lose his investment.

101.     Investor 1 expected to receive a return on his investment in 5 years, which would have been in July 2024.  To date, he has received no payments relating to his investment in Tort Fund SPV1.

102.     Following the October 20, 2020 email from Vineet Chhabra, Investor 2 received minimal information from the Chhabras about the status of his investment.

103.     On April 22, 2021, Investor 2 emailed Michael Chhabra asking if Tort Fund LLC was still in business.

104.     On or about April 28, 2021, Investor 2 attempted to ask for information on the Tort Fund Facebook page and received no response.

105.     Investor 2 then attempted to log into his account on the TortFund.com website on or about June 25, 2021 and was unable to access any information.

106.     The Promissory Note for Tort Fund SPV2 was due to Investor 2 in October 2023 and to Investor 3 in November 2023.  To date, Investor 2 and Investor 3 have not received any payments relating to their investments in Tort Fund SPV2.

107.     Tort Fund LLC no longer maintains an active website, social media presence or functioning email address.

108.     Upon information and belief, Tort Fund LLC currently has no employees or independent contractors acting on its behalf, and it has ceased any business function.  Although Tort Fund LLC remains active as a limited liability company, mail cannot be accepted at the address on file for its registered agent, which is no longer a correct address.

109.     Tort Fund SPV1 is an active entity, although mail cannot be accepted at the address on file for its registered agent, which is no longer a correct address.

110.     Tort Fund SPV2 is no longer an active entity, and its license was revoked in 2020 for failing to file a Biennial Report.

## V.     DEFENDANTS' VIOLATIONS OF THE FEDERAL SECURITIES LAWS

111.     During the relevant period, Michael Chhabra and Vineet Chhabra owned, operated, and controlled Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2.

112.     The Tort Fund SPV1 Unit Purchase Agreement and Tort Fund SPV2 Loan Agreement and Promissory Notes offered and sold to investors are securities within the meaning of both the Securities Act and the Exchange Act.

113.     In connection with the sales or offers to sell securities, the Chhabras and the Tort Fund Entities made use of means or instruments of interstate transportation or communication in

interstate commerce or of the mails, including using the internet, interstate phone calls, and the United States mail. The conduct described herein was in the offer or sale of securities and in connection with the purchase or sale of securities.

114. The misrepresentations and omissions set forth herein, individually and in the aggregate, are material. A reasonable investor would have considered the misrepresented facts and omitted information—including, among other items, misrepresentations about Tort Fund LLC's operations, the safety and security of the investments and the use of investor funds—important in deciding whether to invest in Tort Fund SPV1 and Tort Fund SPV2. Disclosure of the accurate facts or omitted information would have altered the "total mix" of information available to investors.

115. In connection with the conduct described herein, the Chhabras and the Tort Fund Entities acted knowingly, recklessly, or negligently.

116. The Chhabras and the Tort Fund Entities were each makers of false and misleading statements made in writing and orally regarding the Tort Fund Entities. Michael Chhabra and Vineet Chhabra prepared the offering documents for Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2, including the Tort Fund SPV1 Unit Purchase Agreement and the Tort Fund SPV2 Loan Agreement and Promissory Note provided to investors on behalf of the Tort Fund Entities. Michael Chhabra signed the Unit Purchase Agreement for the $50,000 investment in Tort Fund SPV1. Michael Chhabra also signed the Loan Agreement and Promissory Note for each of the two investments in Tort Fund SPV2. Michael and Vineet Chhabra also had ultimate authority over all statements made on behalf of the Tort Fund Entities, including in advertisements and on the Tort Fund website.

117.    Through their material misrepresentations and omissions, Michael Chhabra, Vineet Chhabra and the Tort Fund Entities each obtained money or property from investors.

118.    Through this scheme, the Chhabras and the Tort Fund Entities each engaged in acts, transactions or courses of business that operated as a fraud or deceit upon offerees, purchasers and prospective purchasers of the securities described herein.

## CLAIMS FOR RELIEF

### FIRST CLAIM

#### Violations of Section 17(a) of the Securities Act

119.    The Commission realleges and incorporates by reference the previous allegations as if fully set forth herein.

120.    By engaging in the conduct described above, Defendants Michael Chhabra, Vineet Chhabra, Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2 in the offer or sale of securities, directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

   a.    knowingly or recklessly employed one or more devices, schemes, or artifices to defraud;

   b.    knowingly, recklessly, or negligently obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

   c.    knowingly, recklessly, or negligently engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

121.    By engaging in the foregoing conduct, Defendants Michael Chhabra, Vineet Chhabra, Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2, directly or indirectly, singly or in concert, violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

122.    The Commission realleges and incorporates by reference the previous allegations as if fully set forth herein.

123.    By engaging in the conduct described above, Defendants Michael Chhabra, Vineet Chhabra, Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2, directly or indirectly, singly or in concert, knowingly or recklessly, in connection with the purchase or sale of securities and by the use of any means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

    a.   employed one or more devices, schemes, or artifices to defraud;

    b.   made one or more untrue statements of material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c.   engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person in connection with the purchase or sale of any security.

124.    By engaging in the foregoing conduct, Defendants Michael Chhabra, Vineet Chhabra, Tort Fund LLC, Tort Fund SPV1 and Tort Fund SPV2, directly or indirectly, singly or

in concert, violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange

Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a final

judgment:

### **I.**

Permanently restraining and enjoining Defendants Michael Chhabra, Vineet Chhabra,

Tort Fund LLC, Tort Fund SPV1 LLC and Tort Fund SPV2 LLC and their agents, servants,

employees and attorneys and all persons in active concert or participation with any of them from

violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and

Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §

240.10b-5];

### **II.**

Ordering Defendants Michael Chhabra and Vineet Chhabra to disgorge any and all ill-

gotten gains derived from the activities set forth in this Complaint, together with prejudgment

interest thereon pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C.

§§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

### **III.**

Ordering Defendants Michael Chhabra and Vineet Chhabra to pay civil penalties under

Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act

[15 U.S.C. § 78u(d)];

**IV.**

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], permanently prohibiting Michael Chhabra and Vineet Chhabra from serving as an officer or director of any company that has a class of securities registered under Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

**V.**

Granting such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a trial by jury in this action of all issues so triable.

Dated:  September 6, 2024

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

 /s/ *Gregory R. Bockin*
Gregory R. Bockin (DC Bar No. 450885)
Kara F. Sweet
Judson T. Mihok
Kingdon Kase
Patricia A. Kuzma Trujillo
Philadelphia Regional Office
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
(215) 597-3100
(215) 597-2740 (fax)
bocking@sec.gov
sweetk@sec.gov
mihokj@sec.gov
kasek@sec.gov
trujillop@sec.gov

*Counsel for Plaintiff*
*Securities and Exchange Commission*